May it please the Court, my name is Mark Kemple. I'm representing Great American Chicken Corporation, the appellant here, and it does business as Kentucky Fried Chicken. At least three times this court has ruled under 1332, the statute at issue here, that residence is not prima facie evidence of citizenship. Starting in Cantor v. Warner Lambert, the plaintiff conceded that residency was diverse at the time of removal. As such, though, one of the 15 factors for determining citizenship was undisputed, and it was the only fact on the record. This court ruled that that was not sufficient to establish citizenship under Section 1332, the same statute here. Quote, Section 1332 speaks of citizenship, not of a state. A natural person must first be a citizen of the United States. The natural person's state of citizenship is then determined by her state of domicile, not her state of residence. The same ruling in Harris v. Banker's Life and Casualty. No removal jurisdiction where plaintiff conceded, quote, his 1972 residency. The court said 1972 residency, not his citizenship, and certainly not his citizenship at the time of the filing of the action. What was the stipulation you proposed and the court accepted so that you wouldn't be obligated to respond to the discovery request by plaintiff? What the – what we agreed to, Your Honor, was that the contact information that was found in our files, that the record evidence was we didn't have. Well, what did it speak to? Did it speak to residence or citizenship? It spoke to residence. It spoke to contact information. And you argued to the court that was sufficient to satisfy plaintiff's needs, so they shouldn't be permitted to pursue that discovery. No. Throughout, Your Honor, we stated repeatedly that we did not believe that this would be sufficient to establish citizenship, but that this was the information the court – that the plaintiff wanted to call from our records. The court said we were emphatic throughout. That's not all the information they wanted to call from your records, right? That's not true. They wanted – they wanted the – they wanted the class list. They wanted – yeah, the records that we had, the employment files of various people. And we offered that their theory was – and this was their theory – that the residency would be sufficient to establish a citizenship. We said, no, it won't, Your Honor. Well, they were pretty hesitant to accept that – excuse me for interrupting, counsel, but right at that point – and forgive me for interrupting – but right at that point, the transcript reads to me as though the plaintiff's counsel were quite reluctant to accept that stipulation in lieu of the discovery, right? They were. And the court said, no, Mr. Kempel's – actually, my client's position is a reasonable position, and you're going to accept that stipulation. Right. But to be clear, we were never suggesting that that would be sufficient. Quite the contrary, we – But hang on. But hang on. I think the point you made just a second ago, I appreciate that that wasn't your representation, but I thought that you said just a minute ago that that's what plaintiffs thought, that that was going to be sufficient. And in fact, my reading of the transcript sounds like their arm was twisted a bit. I didn't see plaintiffs conceding that this would do it for them. Actually, you make a distinction that's important. That's correct, Your Honor. So our position was that this would not be sufficient. But rather than go through privacy issues and such relating to personal information concerning former employees years ago, we would so stipulate. But to answer your question, Your Honor, the stipulation was that the last contact information found in our files, which could be from years ago, could be a decade ago, was a California contact address for two-thirds of the class. And you suggested to the Court that was sufficient to meet the plaintiff's needs, and the Court accepted that proposition. And yet, now you're arguing that's not sufficient. I'm having trouble understanding why it is that doesn't invite, at best, sending it back to the district court so plaintiff can do the discovery that you insist it needed, even though you weren't prepared to give that discovery over before. To be clear, Your Honor, we were emphatic and clear that it was not our position that that would be sufficient to meet the plaintiff's needs. But you wouldn't give them other information. You didn't want to give them the name so they can inquire as a citizenship themselves. And what are they supposed to do? Your Honor, we're not the decision-maker. We tendered a stipulation, and it was accepted by the judge and ordered by the judge. Wait a minute. Wait, wait, wait, wait. We're not the decision-maker. The judge came up with this by himself, or did you offer it up? We offered it up. And if you offered it up, isn't it fair for the Court to infer, well, that must be sufficient? Because otherwise, why would they be wasting my time like this? There's no way the Court could have inferred that. We were emphatic in the record that we did not believe that residence would be sufficient to establish citizenship. Then what was your basis for denying additional information in response to plaintiff's request? Because we had a series of objections to the discovery that was tendered, Your Honor, including the privacy of the individual class members or former employees of the company. So if that's true, counsel, then your position is that what you offered by way of stipulation wasn't going to be good enough, and you were going to continue? Really? To pursue your, press your objections so they couldn't get the discovery they would need? Well, not by the means that they were requesting it, and with the discovery that... Forgive me, but really, was there some other alternative other than their discovery request? Because now it seems to me you left them no path whatsoever. Well, again, it's not that we left no path. We offered objections based upon privacy, the California Constitution, a number of different bases. We suggested that to avert producing private information from these files, we would offer a stipulation as to residency. That only went halfway. That's what the court ordered in response. All right. So if that's... At our suggestion. No question about it. And it was your suggestion. So if that's the state of affairs, then why shouldn't we send this back and say you're going to have to do the limited discovery, the sample size, something? That may be the right result, Your Honor. And I've not suggested otherwise. That's not the right result. So why shouldn't you be judicially stopped from saying that it's insufficient? Because, Your Honor, we never claimed it was sufficient. We never made a representation that this would be sufficient. Quite the contrary. We represented at all times that this is a path that would not be fruitful, that residency does not establish citizenship. Your proposed stipulation wasn't going to be fruitful? Really? I don't believe it would be, and I don't believe it is today. That's exactly right. Why did you offer it? Because this is what was being requested of us, Your Honor. And the point being, the point we've made through, sorry. Who requested? This is what was being requested of us. Who requested a stipulation? Plaintiff's discovery sought information relating to private, private information relating to former employees. Yes, I appreciate that. We have an obligation under the California Constitution to object to the release of such information. We proposed that we should provide a stipulation that two-thirds are, excuse me, residents of the state of California. Were at least residents, your last point of contact. At some point, they were residents at who knows when, a hodgepodge of dates. Okay, so I think I misunderstood what you just said or maybe read in. When you said a minute ago this was requested of us, there was discovery requested of you. The stipulation was not requested of you, was it, or do I have that wrong? The stipulation was not requested of us. We suggested that as a means to avoid the production of private information. But I want to be real clear. At no time, quite the opposite, did we suggest that this would be sufficient. Our position is, and remains today, that the question of citizenship is a complex, individualized question with 15 different factors. As the Ninth Circuit has repeatedly held, residency is not enough. As we asserted below, residency is not enough. Can you point me to some place in the record where you told the court this wasn't going to be sufficient? I can. It's in my brief, Your Honor. It would take me a moment to find it, and I will do so. It may well be there. I didn't remember that. Forgive me. I forgot to try and reserve some time. I would like to reserve five minutes. No, that's okay. Just keep watching your clock. You're fine. Thank you. So that's where we are. So what the trial court then did with this information is it overtly said, while I acknowledge this is not enough to establish jurisdiction in the first instance under the citizenship test of 1332 for establishing jurisdiction, I'm going to use a different standard for establishing an exception to the jurisdiction, even though the exact same verbiage appears in both places within the statute. And so the court adopted a lower standard for finding an exception, an abstention to undisputed CAFA jurisdiction for the same question, citizenship, than would have been required to establish citizenship to establish jurisdiction. That has multiple problems. First of all- You mean the presumption of continuing domicile? No. The question- What are you referring to then? You have to have citizenship before it continues forward. So the point was the court, the district court below, acknowledged what was before him would not be enough to establish the court's jurisdiction, CAFA, which by the way is undisputed, right? It's simply not disputed that this exists. The question then was, what's the test for finding an exception, an abstention from CAFA? And the court interpreted the same term, citizen, in a much more really broad way to create the exception to CAFA, which has two problems. First of all, when the same term is used in the same statute, indeed the same subsection of the same statute, it is presumed to mean the same thing, point one. Point two, this statute was adopted against a wall of case law, judicial determinations, that residence does not equal citizenship. Yet the court said, I'm going to use the word citizenship, which Congress chose to mean residence in this context, in the context of vitiating favored CAFA jurisdiction. He completely reversed the presumptions in CAFA. CAFA is favored federal jurisdiction. Its exceptions are to be narrowly construed. To construe the same word used in both instances differently and in a way that vitiates CAFA jurisdiction is directly contrary to the purposes of CAFA and indeed inverts completely its standards. Your brief notes that point and quotes one of our decisions reflecting the intent to favor the exercise of federal jurisdiction over class actions with interstate ramifications. What are the interstate ramifications here? Yes, so CAFA is set up to have minimal diversity requirements. CAFA merely requires that either a defendant be diverse from the class members or any putative class member be diverse from the forum state. So it's a minimum diversity requirement under CAFA. Here, and the whole point of this Class Action Fairness Act is the court recognized that a lot of these class actions involve citizens of multiple states. What's interesting here is the only evidence before this court, you know, the court sets up this- Well, is the interstate ramification the fact that some of the individuals may currently or at the time of filing live in a different state? That and also because that affects interstate commerce because the people, we may be saying the same thing, the people involved in the litigation involve multiple states. So, yeah, I mean, Congress has sort of defined what the interstate connection is here through this minimum diversity requirement. So- I'm missing that in the employees that work for KFC making minimum wage and traveling across states paying more fees on transportation. I don't think that's the nature of what the court below thought of the continuing domicile issue because I think you're ignoring that. He- No, Your Honor, so- I don't think that's counter to CAFA either. Respectfully, Your Honor. So the interstate, I do want to reserve some time here, but answer your question at the same time. The interstate component here is the state of citizenship at the time of removal of deputative class members. Right. That these people 10 years ago gave a contact address in California and four or five years ago worked for a brief time, for a long time, we don't know in California, doesn't answer the question of what their state of citizenship was at the time of removal. It sort of cuts two ways, right? On the one hand, people I think of low income are much less likely to own their own homes and maybe be more mobile. I don't know what an economist would say about this. I thought about this. I mean, on the other hand, it costs a lot of money to move out of state. So we just don't have that here. Correct. That's the point, Your Honor. And so, for example, in Mondragon, what the court did is acknowledge that even though the class was defined as people purchased vehicles in California, registered them in California, which, by the way, is one of the elements of citizenship, it's on its face there. The court even says people can live in California within that class, but not be a U.S. citizen. So it's a complex undertaking to determine what the citizenship is of anyone, let alone two-thirds of a class at the time of removal. It's not that complicated. What is the authority for proof of U.S. citizenship, unless it refers only to residency and citizenship involved in the class action? That's in Cantor. U.S. citizenship is required? Yes, Your Honor. To be a citizen of a state, a natural person must first be a citizen of the United States. Point one. By the way, there was no evidence of the citizenship of these people being in the United States. In fact, there was evidence to the contrary that we introduced. Counsel, you're just about out of time. Yes. Mondragon as well, and several district court cases have also held that. Thank you, Your Honors. Thank you. Good morning. May it please the Court. Scott Brooks. Counsel, may I ask a question right off the top of that? I know I'll try to stay out of your way, but did you ever accept this stipulation or were you ordered to? From our perspective, Your Honor, it was an order. And may I step briefly? I have the page open. And I'm looking at the pages 70 to 73 of the record, but in particular page 70 of the record beginning at line 2, where Judge Wu says, the district court, so why don't we do this? I will find that the defendant's offer of stipulation is sufficient at this point in time to avoid or to resolve the discovery dispute. Right, and so that's different, because the stipulation was just about residency. But if it's sufficient to avoid the discovery dispute, you asked for a whole lot more than residency in the discovery request. That's absolutely correct, Your Honor. We asked for not just a class list, but contact information, emails, everything we needed to, we hoped anyway, to establish every aspect necessary to establish an exception under the home and the local controversy exceptions to CAFA. So was the idea to do some kind of a sample set, I think there's 6,000 people, putative class members here, so a sample to figure out how many of those folks, many, is it four years later, still were present with intent to remain in California and to extrapolate? That would be one option. Until we got the data, we wouldn't really know what to do with it. But that's certainly the most cost effective and efficient, and as we know from Dukes and other cases, that's a perfectly acceptable way to proceed. And in fact, I don't want to interrupt you, Your Honor. No, I'm interrupting you. Go ahead. The district court actually at one point mentions that, and forgive me, it may be in this, oh the page on 70, the bottom of 70, he talks about, well you know, if we need to come back, maybe we'll do sampling. Right, and so my other question is, I'm wondering about, be careful what you wish for. If you prevail at this point and go for, because that was your plan, I think that was your plan. You had a very different plan for getting the evidence you need to establish what you need for this exception to CAFA jurisdiction, so I'm concerned, frankly, about what outcome you're really looking for here. Because on the one hand, if you go forward, isn't this going to be somewhat wobbly for you? You mean in terms of if we go back to the district court and conduct discovery? No, if you don't have to go back to the district court and conduct discovery. What's the outcome you're seeking today? We are seeking an affirming of the order because the order is remanded, the case is not stayed, and in fact, my understanding, there was a status conference in the state court today, if I'm correct. So actually, the case is remanded and is proceeding. And that's your request? Yes, Your Honor, is that the order granting the... We have case law. He's right. We have case law that talks about you have to have some evidence. What's your evidence? You've got the stipulation. The evidence is stipulation, and it's also the employment. It's also the fact of employment. Okay, and that gets you, doesn't it? You've got evidence of residents, folks who worked currently or previously for KFC in California, and I don't think it's much of a stretch to think that folks who are in that income bracket are living and not commuting across state lines. No, Your Honor. But that doesn't get you there, right? That's just residents. So what evidence is there of intent to remain? Well, Your Honor, we would actually... We would request the court adopt the reasoning in the Mason case, in effect, what this court did and left open in Modrigal on that issue of drawing that inference. Right, and your briefing is very clear about that, and so then I wonder, how long is that inference supposed to last? Well, the inference... How many years later? Have we ever really addressed that? How far does it get you? Well, we're not talking about a huge amount of time. How many years is it? Four? Yeah, I think it's between four and five years from the, you know, reaching back from the filing of... Excuse me, from the removal or the filing of the complaint. And on this point, if I can just briefly mention, there's a very interesting point that they make in counsel made today, and it's also found in the declaration, is he says we go back 10 years. We have addresses of people going back 10 years who were still employed, who were still employed, he says, during the class period. So right now, we have an admission that we have people who were working for years. Yes, but you need more than one. You need to hit a certain percentage, right, and it's very specific, and... And we have at least... Well, the stipulation doesn't give you much cushion. No, Your Honor, but that was the best we could get. Well, I understand that, and it's not what you asked for, but that's the hand that you were dealt. Yes. And if we recognize that... And even at the time, I don't recall which counsel's name it was, but talked about, you know, we think it's really 90%. This is just at least, but the stipulation only says at least, and you've got the risk of some of the people moving out of state, and you've got the reality that at least some of them were probably not citizens. So is there enough there for us to say that the district court's finding wasn't clearly erroneous or that there wasn't... That the evidence wasn't insufficient? I think clearly it was not erroneous, Your Honor. The court felt, when he made this decision, and said, look, enough with this discovery dispute. I've read your Rule 26. I've read everything. I see where we're going. I think this is enough. He talked to both counsel. We said, we don't think it's enough. They had their position, and he said, no, I think this is enough. Let's go forward. Enough to obviate the need to discovery? Or enough to... Proceed with... Well, both. To satisfy the mark you need to hit for the jurisdictional exception. I think it was both, but, you know, in looking at, again, 7073, he says, look, I'm going to make this finding. It's enough. It's sufficient to get rid of this discovery dispute, and I think if we can go forward, he goes on to say, enough I'm wrong, and if we, you know, then he talks about this initial motion to remand, clearly contemplating that if there's some problem, we can come back, Ms. King and people she represents can go back, do some more discovery, get what we wanted, and briefly, if I may say, privacy is, in Wage and Hour cases, is not a big deal. Protective orders are run of the mill. So... Hence my question about what is it you're really wishing for, because you run a risk of needing to go back and do this very thing, right? No, we... That's understandable, Your Honor, and it's, as I said, it's contemplated by the district court, but we think that affirming that there's enough here to affirm a judge's order, and we go ahead and proceed in state court. The defendants argue that they told the district court at the time that this stipulation wouldn't be sufficient. Is that true? Well, Your Honor, yes, they did. They weren't going to admit, and of course, I wouldn't expect them to admit that we're going to... How do you resist a discovery? But did you respond to that, or your predecessor, I know there are lots of attorneys here, so I don't know when you got involved, but was the response, well, then we're going to need more because defendant's not going to let us get away with this when the time comes? It was something like that, Your Honor. We wanted more. We wanted the discovery, because I won't say that we foresaw exactly this, but we did foresee this. We foresaw that we were being led down a primrose path to some extent, we felt, and we wanted that discovery. How much, if we were to send you back right now, how much of a delay would you have experienced? You mean from... What day did he rule? To conduct the discovery? Yeah. What day did he rule, please? It was January 16th, I think it was January 29th, 30th, I think was when the order came out. Okay. So we've been at this, we've lost about eight months, and then we lost several months before that while we're doing discovery disputes and trying to work it out and having the hearings and things like that, ending up in the stipulation, which I think was November 30th, a couple months before this. And that's what we're looking at in these types of cases, if we accept what the defendant is offering here. We have, it's exactly what I think Your Honor alluded to in Mondragon, is that we have an exceptionally difficult circumstance for anyone seeking to take advantage of what Congress said, and we hear how narrow it is from defendants, how narrow these exceptions are, but it's no more narrow than the statutory mandate. We have another exception contained in the statute, interests of justice, which is discretionary. These two are not. Congress clearly intended that situations like this, where you have state laws, which, you know, these state laws cannot be applied outside of California. One of the laws that we've sued upon is PAGA, which is specifically a state law enforcement action on behalf of the state of California. It cannot apply extraterritorially. I find it difficult to imagine the Flint water crisis in the Mason case is a great example of course, but a more local California-interested situation than this, and as I think the Court was alluding to, the only aspect that may be in any way extraterritorial is those few people who may have left California since then. And again, from this record, with- But we don't, what evidence do we have that kind of begs the question? We have one. The few people who have left, I just have no idea. I misspoke, Your Honor. It's one person. They have all the records. They have everything. They have all the contact information. They have their social security numbers. Everything which the state of California, the federal government mandates that an employer must maintain. They have all of that. And they came forward with one person. And I think that Judge Wu was correct in noting that. I think it's in Montego to talk about the entire record, and I think that's an important point. Anything further? Thank you, Your Honor. Thank you, Counsel. Thank you. Thank you. I'll be brief, obviously. First of all, the Superior Court case in California stayed. Secondly, without question, we objected throughout, both at the time of the discovery dispute and when the briefing occurred, that this would not be sufficient. This was a meet and confer. We made a suggestion stating we did not believe it would be adequate. The court said, I'm going to go with that suggestion. And you're going to continue to press your objections to discovery if we send it back? We have to object on the basis of privacy. We are legally obligated to do so. What the court does to resolve that, if it enters a protective order, what have you, it does. If I may, Your Honor, this question of interstate nexus, the diversity under CAFA is not defined by the laws that are being pursued on a claim. It's defined by the citizenship of the people at the time of removal for which there's not enough evidence. Your Honor, in terms of is there enough here now, the court acknowledged below there wouldn't be enough to establish jurisdiction under the citizenship standard or defeat it, and drew a new standard to defeat jurisdiction. There's clearly not enough evidence here. Importantly, there are 15 factors that go into determining citizenship. As the court did in Mondragon, it referred to the sprint, in-ray text messaging litigation and said this is a way to prove up a case. And that involved a situation where the plaintiff engaged in sampling, engaged in questionnaires concerning continuing intent to remain in the State and such. That would be the method or a method that the plaintiffs might prove. There's a rich body of case law on establishing citizenship. Counsel, we understand this and yours substantially over your time. Thank you, Your Honor. Thank you. Thanks to both counsel for your helpful argument. That concludes our arguments for today. We'll stand in recess. All rise.
judges: Clifton, Christen, Rufe